# JJGPS Juvenile Justice Geography, Policy, Practice & Statistics — StateScan

Angel Zang, MBA, MSW                                                                                                                      July 2017

*Juvenile Justice GPS (Geography, Policy, Practice & Statistics) is an online repository providing state policy makers and system stakeholders with a clear understanding of the juvenile justice landscape in the states. The site layers the most relevant national and state-level statistics with information on state laws and practice and charts juvenile justice system change. In a landscape that is highly decentralized and ever-shifting, JJGPS provides an invaluable resource for those wanting to improve the juvenile justice system.*

## U.S. Age Boundaries of Delinquency 2016

This StateScan compares upper, lower, and extended age boundaries found in juvenile statutes to give a deeper understanding of how states define delinquency.  State comparisons may assist jurisdictions, legislators, and advocates considering statutory and practice changes for juvenile justice.

State analyses include the District of Columbia and U.S. territories with court systems. For ease of discussion in this publication, all of these jurisdictions are referred to as states (56 in total).

States address where childhood ends and adult criminal responsibility begins by specifying age boundaries in law.  Age criteria are found in laws that are organized by subject and compiled with amendments into codes of juvenile and criminal (or penal) statutes. Youth in conflict with the law may be subject to municipal, juvenile, or (adult) criminal court jurisdiction, depending on the state's legal structure and court organization.

Delinquent acts are law violations of children and older youth that would be considered a crime if committed by an adult. State legislatures usually assign exclusive or original jurisdiction over delinquent acts to a juvenile or family court judge.  Over time, state legislatures have amended statutes to modify what can be considered a delinquent act by age, alleged offense, and other conditions.

Child-only law violations such as running away, truancy, and under-age drinking are usually considered status offenses with other labels, and may have different age boundaries than described in this StateScan. Juvenile and penal codes define status offending conduct and usually split jurisdiction between municipal and juvenile courts.

Many fine-only violations or infractions, such as those defined in motor vehicle or fish and wildlife codes, are placed under the original jurisdiction of a municipal court, regardless of the alleged violator's age. Minors found responsible for violating these statutes are not considered or adjudicated "delinquent".

States sometimes identify exceptions for infancy, allow for an infancy defense, or assign a minimum age of criminal responsibility in penal or criminal procedure statutes.  Although these serve to guide juvenile court practice in some states, when compared among states and against juvenile codes within the state, it is clear that these age limits are not interchangeable with age boundaries of delinquency.

Juvenile and criminal codes direct when felonious allegations may or must be subject to (adult) criminal court rather than juvenile court jurisdiction. States delineate various procedures with specific age and offense thresholds for when and how jurisdiction is transferred on a discretionary or mandatory basis.  When discretionary, the judge makes the decision on an individual basis. These are known generally as transfer laws, and states set minimum ages of adult criminal responsibility that can be confused with age boundaries of delinquency.  Age boundaries for delinquency apply more broadly to original or exclusive juvenile court jurisdiction for minors.

Statutory age boundaries intend to set a framework that harmonizes needs for public safety, holding juveniles accountable for their actions, and reducing barriers to rehabilitation for youth who can likely be rehabilitated. Upper, lower, and extended ages define the parameters for juvenile justice in each state.

### Upper Age Boundaries

The upper age boundary refers to the oldest age at which an individual's alleged conduct can be considered delinquent and under original juvenile court jurisdiction. For federal violations, the Federal Juvenile Delinquency Act (18 USC § 5031-5042) defines juvenile delinquency as "the violation of a law of the United States committed by a person prior to his 18th birthday which would have been a crime if committed by an adult...." In a great majority of states, the upper age boundary has traditionally been age 17.

U.S. Age Boundaries of Delinquency in State Juvenile Statutes, 2016

| State | Upper Age | Lower Age | Extended Age** |
|---|---|---|---|
| Alabama | 17 | NS | 20 |
| Alaska | 17 | NS | 19 |
| Arizona | 17 | 8 | 20 |
| Arkansas | 17 | 10 | 20 |
| California | 17 | NS | 24 |
| Colorado | 17 | 10 | FT |
| Connecticut | 17 | 7 | 19 |
| Delaware | 17 | NS | 20 |
| District of Columbia | 17 | NS | 20 |
| Florida | 17 | NS | 20 |
| Georgia | 16 | NS | 20 |
| Hawaii | 17 | NS | FT |
| Idaho | 17 | NS | 20 |
| Illinois | 17 | NS | 20 |
| Indiana | 17 | NS | 20 |
| Iowa | 17 | NS | 20 |
| Kansas | 17 | 10 | 22 |
| Kentucky | 17 | NS | 20 |
| Louisiana | 16 | 10 | 20 |
| Maine | 17 | NS | 20 |
| Maryland | 17 | 7 | 20 |
| Massachusetts | 17 | 7 | 20 |
| Michigan | 16 | NS | 20 |
| Minnesota | 17 | 10 | 20 |
| Mississippi | 17 | 10 | 19 |
| Missouri | 16 | NS | 20 |
| Montana | 17 | NS | 24 |
| Nebraska | 17 | NS | 20 |
| Nevada | 17 | NS | 20 |
| New Hampshire | 17 | NS | 20 |
| New Jersey | 17 | NS | FT |
| New Mexico | 17 | NS | 20 |
| New York | 15 | 7 | 20 |
| North Carolina | 15 | 6 | 20 |
| North Dakota | 17 | 7 | 19 |
| Ohio | 17 | NS | 20 |
| Oklahoma | 17 | NS | 18 |
| Oregon | 17 | NS | 24 |
| Pennsylvania | 17 | 10 | 20 |
| Rhode Island | 17 | NS | 20 |
| South Carolina | 16 | NS | 20 |
| South Dakota | 17 | 10 | 20 |
| Tennessee | 17 | NS | 20 |
| Texas | 16 | 10 | 18 |
| Utah | 17 | NS | 20 |
| Vermont | 17 | 10 | 21 |
| Virginia | 17 | NS | 20 |
| Washington | 17 | NS | 20 |
| West Virginia | 17 | NS | 20 |
| Wisconsin | 16 | 10 | 24 |
| Wyoming | 17 | NS | 20 |
| **Territory** | | | |
| American Samoa | 17 | 10 | 20 |
| Guam | 17 | NS | 20 |
| Northern Mariana | 17 | NS | 20 |
| Puerto Rico Islands | 17 | NS | 20 |
| The Virgin Islands | 17 | NS | 18 |

"NS" means no age specified.
"FT" refers to the full term of the disposition.

**Extensions requiring consent are included. Extensions for incapacity, restitution, and narrow specialty court dispositions that otherwise raise the extended age to full term (like drug court) were excluded.

After decades of little movement, many states with an upper age boundary below 17 have recently raised the age to conform to the national majority, and others have ongoing taskforces to explore options for raising the age. In 2016, the upper age boundary of original juvenile court jurisdiction for delinquency was through age 17 in 47 out of 56 states (see table on left). Only nine states had yet to raise their upper age. Four of those have done so, but are not yet in effect.

New York and North Carolina are the only two states where no offense committed by a 16- or 17-year-old can be considered delinquent, but both recently passed laws to raise the upper age beginning in 2018 and 2019.

- 4/10/17, NY's A3009C raised the age through 16, effective 10/1/18, and through age 17, effective 10/1/19.

- 6/28/17, NC's SL2017-57 raised the age through 17, effective 12/1/19.

Law violations of 17-year-olds in an additional seven states (GA, LA, MI, MO, SC, TX, WI) cannot be considered delinquent and are all prosecuted as adults, though South Carolina and Louisiana have amended their upper age for future years.

- 6/6/16, SC's Act 268 raised the age through age 17, effective 7/1/19.

- 6/14/16, LA's Act 501 raised the age through 17 for some offenses starting 7/1/18, and others beginning 7/1/20.

Pending implementation, by the end of 2020, only five states (GA, MI, MO, TX and WI) will continue to prosecute law violations of a 17-year-old the same as an adult, regardless of severity.

An estimated 82,400* youth aged 16 or 17 faced adult criminal prosecution in the 9 states that routinely excluded 16- and 17- year olds from juvenile court in 2016 (see methods).

**Understanding Delinquency**

Juvenile courts were created to manage the unique needs of juveniles who were considered easier to rehabilitate than adults. Protecting juveniles from the consequences of an adult criminal record and separating incarcerated juveniles from the influence of adult criminals were main reasons for the establishment of juvenile courts. Differences continue to reflect principles that children who are less culpable should be supervised under the broader civil guidance of a juvenile court judge, rather than only the punishments required for adult criminals.

Youth who enter a guilty or nolo contender (no contest) plea, or are found guilty in criminal court, not only lose access to rehabilitation services tailored for juveniles, but also face collateral consequences that last much longer than the sentence itself. Beyond educational and employment repercussions, such as no access to financial aid or having to explain a "yes" answer to a criminal conviction question on job applications for life, youth may not realize that taking a plea leads to more than the gambit of a few visits with an adult probation officer. Certain convictions in some states, for example, could mean the entire family gets evicted permanently from public housing.

> **History of the U.S. Upper Age Boundary for Delinquency**
>
> From 1975-2015, only eight states had changed their upper age of juvenile court jurisdiction:  Alabama raised its upper age from 15 to 16 in 1976 and from 16 to 17 in 1977; Wyoming lowered its upper age from 18 to 17 in 1993; New Hampshire and Wisconsin lowered their upper age  from  17  to 16 in 1996; Rhode Island lowered its upper age from 17 to 16 and then raised it back to 17 again four months later in 2007 (the only state to lower the age); Connecticut passed a law in 2007 to raise its upper age from 15 to 17 gradually from 2010 to 2012; Illinois raised its upper age for misdemeanors from 16 to 17 in 2010; Massachusetts raised its upper age from 16 to 17 in 2013; Illinois raised its upper age for most felonies from 16 to 17 in 2014; and  New  Hampshire raised its  upper age from 16 back to 17 in 2015.

The U.S. Department of Justice initially funded the American Bar Association's development of a National Inventory of Collateral Consequences of Conviction, which compiles lists of hundreds of potential consequences for adult convictions in each state. Judges and public defenders could not possibly counsel a youth about all of them when negotiating or accepting a guilty plea, and neurologists would argue that youth could not fully comprehend the potential effects anyway.

Today's research shows more tangible evidence that a different approach for juveniles has biological components. Neurologists assert that adolescents have immature brain structures and do not have as much control over impulses or decision-making as adults in their mid-twenties. The plasticity of a younger brain affords a greater opportunity for change when tailored interventions are received (Perry 2013).

While states continue to debate the issue, internationally, United Nations committees recommend that the upper age boundary should be no lower than 17, and (adult) criminal responsibility for those under age 12 is deemed "not internationally acceptable" (United Nations 2007, 2014).

Advocates and legislators working to raise the upper age appear to be getting closer to their goal.  Most state work groups concur that the best chance for rehabilitation occurs at younger ages and any higher per-child cost of juvenile and human service budgets could ultimately offset corrections budgets and benefit communities. Federal funding tied to compliance with the Prison Rape Elimination Act, which joined the Juvenile Justice and Delinquency Prevention Act's requirement to separate youth under age 18 by "sight and sound" from older inmates, is encouraging change in remaining states.

Five states still have not amended laws to prevent 17-year-olds accused of any offense to be criminally prosecuted and sentenced as adults, while Connecticut's governor is touting an upper age through age 20 as part of their approach.  If successful, it would be the first state in the nation where conduct of a person older than age 17 could be considered a delinquent act.

**Lower Age Boundaries**

Some states identify lower age boundaries in juvenile statutes, and/or rely on common law, case law, court rules, and penal codes to assist with age parameters in practice. Only 18 states specified a lower age boundary for delinquency in juvenile statutes in 2016. Of those, North Carolina had the lowest age of six, which is younger than the federal tradition, where an early U.S. Supreme Court case mentioned that youth younger than age seven are presumed incapable of criminal intent at Common Law (see Allen v. United States, 150 U.S. 551 [1893]).

Five states (Connecticut, Maryland, Massachusetts, New York, and North Dakota) identified age seven and one state (Arizona) set the lower age boundary at age eight. Age 10 was the most common lower age boundary, listed in 12 of the 19 states that specified a lower age for delinquency (see table on page 2).

**Extended Age Boundaries**

Extended age boundaries are statutory provisions that indicate the oldest age a juvenile court can retain or resume jurisdiction over an individual whose delinquent conduct occurred before the end of the upper age boundary. Extensions typically occur so a juvenile court judge can monitor completion of dispositions and services intended to rehabilitate the child. Extended release plans may include voluntarily extended placements or aftercare services.

Age limits for extensions generally vary by offense and type of disposition (e.g., probation and secure facility placement). Extensions in some states require the consent of the youth or a hearing to extend juvenile court supervision beyond the upper age boundary. By statute, seven states permit delinquency jurisdiction through age 18 or 19, 40 states extend through age 20, six states range from age 21 to 24, and

**Methods**

To compare age boundaries of delinquency among states, juvenile statutes were reviewed in spring of 2017 using WestlawNext™ online, Legislative Reference Bureau of American Samoa: http://www.asbar.org/index.php?option=com_content&view=category&id=185&Itemid=172; and Commonwealth of the Northern Mariana Islands Law Revision Commission: https://www.cnmilaw.org/frames/CommonwealthCode.html. Searches were conducted in juvenile codes for definitions of adult, child, juvenile, delinquent, and delinquent act; as well as original jurisdiction and disposition sections in juvenile codes. Penal codes were searched for infancy exceptions and youngest age of criminal responsibility.

*Excluded youth estimates (page 3) were based on analysis of petitioned juvenile court case rates stratified by age, race, and county youth population applied to youth excluded from juvenile court in those states in 2016, using the approach outlined in http://www.ncjj.org/pdf/Transfer_232434.pdf on page 21.

**Definitions**:

**Common law**: (case law) sets precedent by judicial decision on individual cases when no statute exists or a new legal aspect is raised. The reference includes state systems based on Civil Law (LA, PR) as they also follow procedures of common law for criminal cases.

**Municipal court**: refers to a lower trial state court of general or limited jurisdiction (or department of a unified court, as in CA). Locally, it may be known as district, city, mayor, or traffic court, etc.

**Regulations**: refers to detailed procedural requirements written by an executive branch government agency when a statute authorizes or delegates rulemaking to it. Regulations may also be referred to as administrative law. Judges may choose to yield or defer to regulations when making decisions, but do not have to follow them.

**Statute**: compilation of written laws in effect as organized by topic (codified). A statute incorporates (consolidates) new laws that amend it.

three extend to the full term of the disposition and have no specified age limit (see table on page 2).

For eligible youth in need of longer care or services leading to successful adulthood, states can opt for agreements between child welfare and juvenile justice organizations to receive federal reimbursement for non-secure placement extensions and resumption of juvenile court jurisdiction up to age 21. Many states have statutory language to accommodate this, and more are likely to follow (see the U.S. Department of Human Services Administration for Children and Families, Program Instruction ACYF-CB-PI-10-11 and the Child Welfare Policy Manual 8.3A.1, 8.3A.11 for guidance).

A measure of the total number of potential years of juvenile court jurisdiction over a youth also reflects different approaches among states. In 2016, the total years of original juvenile court jurisdiction over a youth adjudicated delinquent could span from a strict eight years in Texas to a potentially unlimited amount of time in Hawaii. States must balance costs associated with extended age of delinquency jurisdiction against costs of (adult) youthful offender and regular adult prosecutions.

Jurisdictions will also continue to work out the complexities of when youth are legal adults in some areas of law, such as contracts or health care, while remaining a legal child for this purpose.

**Conclusion**

State legislatures construct guideposts with statutory age boundaries to assign childhood, adolescence, and adulthood to law violations that reflect variations of the intention of each state. This StateScan suggests that age boundaries of delinquency in juvenile statutes set the stage but are intertwined with myriad considerations for juvenile justice practice.

Youth and families must navigate a confusing web of rules and exceptions, while other stakeholders determine when conduct should be considered delinquent, the proper court for initial and ongoing authority, and whether dispositions are sufficient to balance public safety and accountability to victims with the needs of individual youth. Statutory evolutions will continue to gain speed as jurisdictions are better able to quantify and translate case-level data to what works best in practice, ultimately influencing what should be formalized in law.

---

**References**:

Perry, B. 2013. "Policy: Neurodevelopment, Maltreatment & the Juvenile Justice System," *In Brief Reflections on Childhood, Trauma, and Society*. Houston: The Child Trauma Academy Press. 47-84.

Sickmund, M., and Puzzanchera, C. (eds.). 2014. *Juvenile Offenders and Victims: 2014 National Report*. Pittsburgh, PA: National Center for Juvenile Justice. www.ojjdp.gov/ojstatbb/nr2014/.

Office of the United Nations High Commissioner for Human Rights, Committee on the Rights of the Child. 2007. *Children's Rights in Juvenile Justice, General Comment No. 10*. www2.ohchr.org/english/bodies/crc/docs/CRC.C.GC.10.pdf.

Office of the United Nations High Commissioner for Human Rights, Human Rights Committee. 2014. *Concluding observations on the fourth periodic report of the United States of America*. Adopted March 26. tbinternet.ohchr.org/_layouts/treatybodyexternal/Download.aspx?symbolno=CCPR%2fC%2fUSA%2fCO%2f4&Lang=en.

The National Center for Juvenile Justice is a non-profit organization that conducts research on a broad range of juvenile justice topics and provides technical assistance to the field. NCJJ is the research division of the National Council of Juvenile and Family Court Judges.

Angel Zang, MBA, MSW, azang@ncjfcj.org, 412-246-0844, Policy Analyst, with the National Center for Juvenile Justice, prepared this document with support from the John D. and Catherine T. MacArthur Foundation. Points of view or opinions expressed are those of the author and not necessarily those of the Foundation.

© National Center for Juvenile Justice
3700 South Water Street, Suite 200
Pittsburgh, PA 15203-2363

Suggested Citation: Zang, Angel. 2017. U.S. Age Boundaries of Delinquency 2016. JJGPS StateScan. Pittsburgh, PA: National Center for Juvenile Justice.